Mr. Justice Bradley
delivered the opinion of the Court:
The complainants, copartners under the name of the Independent Ice Company, by their bill of complaint, aver *41 that they were equally and jointly interested with the defendant in a lease by John Marbury to them, and in a privilege of purchase contained therein of lot No. 4, and the east half of lot No. 5, on the south side of Georgetown, D. C., and that in violation of their rights the defendant had procured a deed of the whole of the property to himself, to the exclusion of complainants, and refuses to convey to them; that upon the faith of the right of purchase the complainants had made expensive improvements, and had rebuilt a wharf upon the lots under an agreement that the defendant would pay one-half the amount expended for it; that they have offered, and are ready and willing to pay to the defendant one-half of the amount paid by him for the property, less such sum as on a proper accounting may be found to be due by the defendant on account of the extension and improvement of the wharf upon the premises, upon the delivery to them of a good and sufficient deed, conveying title to an undivided one-half interest in the property. They pray that the defendant may be decreed to convey to them by a good deed in fee simple an undivided one-half interest in the property, and they offer to pay to the defendant one-half of the purchase money, less such sum as may be due by defendant on account of the extension and repair of the wharf.
The defendant, by his answer, denies that complainants took or had any interest in said land under said lease, either as lessees or in any option or right of purchase; and he avers that the lease was made solely to him, and that it was improperly and without authority so interlined by the complainants after its execution as to make them parties to it, but it was never assented to by John Marbury, and the alteration was made without the knowledge or concurrence of the lessor. He denies that the complainants made expensive improvements upon the faith of the lease, but does not deny that the wharf was improved and extended, or that he agreed to pay one-half of the expense; he alleges that the complainants agreed to keep the wharf in repair, but failed *42 to do it; avers that Marbury declined to convey at first, when the alteration was called to his attention, but finally agreed to convey to him alone.
The facts as developed by the depositions appear to be that complainants, prior to the date of the lease, had purchased the ice plant of J. Harrison Johnson, upon lots two and three on Water street, Georgetown, and had leased the land from him with the privilege of purchase for the sum of $10,000; and that at the same time, J. Harrison Johnson, who had a sort of verbal lease with Marbury of the land in controversy, put the complainants into possession of it. This lease was to expire June 30, 1885. The defendant was using the Marbury lots at the time of' complainants’ occupancy for the purpose of wharfing wood and coal. He continued to so use them.
When the complainants took possession they changed the front of the ice houses, and built a platform on the west side so as to use a part of lot No. 4, one of the lots in controversy, in loading their wagons, and this use of that lot became an important adjunct in the conduct of their business. About this time when the Marbury lease or license expired, the complainant, Church, for the firm, and the defendant, had some conversation with' reference to procuring a lease of lot 4, and one-half of lot 5, with the privilege of purchase. Church says that he instructed the defendant to get a lease for three years to them jointly, with the privilege of purchasing for $4,000. The defendant denies this and says that Church told him that he could get the lease on his own account. The defendant did get the lease and took it to Church executed for inspection, and he admits that thereupon Church remarked that the company were not mentioned, and he replied that it made no difference. He left the lease with Church who says that he altered it, so as to make complainants parties in the presence of the defendant, kept it to make a copy, telling him that he would have a copy made by his son, and that defendant could then take it to Mr. Marbury and have him confirm it. *43 Defendant admits that he left the lease with Church, and that he subsequently went to Church’s son, obtained it and discovered that it was altered; he denies that it was altered in his presence, or that he was aware of the fact, until he subsequently obtained possession of it. He admits that he went before a notary public and acknowledged it in its altered condition, and that he caused it to be so recorded among the land records of the District of Columbia. He says that he took the lease to Church for inspection to see if it was in due form, as he was inexperienced in such matters. He also says that when he found that Church had altered it so as to make the company parties jointly with himself he did not protest or object or say anything because he knew that such an alteration was invalid. Soon after the lease was made the complainants and the defendant agreed as to how much of the leased premises they should respectively occupy, and they apportioned the rent accordingly, so that complainants paid one-fourth and the defendant three-fourths.
The complainants built a shed on the west side of the ice house projecting some thirteen feet over lot 4 for the protection of their wagons, and in January, 1888, a few months before the expiration of the term of the lease, they built a new wharf along the front of the several lots at a cost of over $700. The defendant stood by and permitted this to be done, and made no declaration of any purpose to claim the exclusive right to the option of purchase. Two months before the lease expired he had a dispute with complainants’ agents as to the occupancy of the land, and thereupon he procured the lease from the record office, took it to Mar-bury and showed it to him. Marbury said that the lease was void because altered, but that inasmuch as he had agreed to sell to defendant at $4,000 he would do so; whereupon the defendant paid Marbury $4,000, and received a deed of the land. The special term decreed a conveyance upon payment of $2,000, less such amount as the auditor might find to be due by the defendant as his just share of the cost of the wharf.
*44 It is claimed by the defendant that if the lease was altered by Church, with the consent of defendant, the bill should be dismissed, because they were joint wrong-doers against Marbury. We are, however, unable to see in what respect Marbury was injuriously affected by the alteration; he could have assented to it, and have had an additional responsible lessee, or he could have repudiated it. But he is entirely out of the question, and his rights cannot affect the equities if any, existing between the complainants and defendant.
It is also claimed by the defendant that Marbury repudiated the lease and made his sale to the defendant outside of, and without reference to it, and that therefore the complainants have no equity. The fact is, nevertheless, that Marbury sold to him for $4,000, the agreed price, because he had agreed to sell to him at that price. If the defendant agreed with the complainants that they might have an equal and joint right with himself to purchase the land for $4,000, it does not matter that he and Marbury agreed to consider the sale actually made, as made under or outside of the covenant contained in the lease. It is the purchase that we are dealing with, not what the defendant and Marbury may have been pleased to characterize it. Having assented to the alteration of the lease by his silence, having ratified it by his acknowledgment and record of it as altered, and having permitted the complainants to act upon the faith of an interest under the lease never repudiated by him until he obtained his deed, and having stood by and permitted complainants to make expensive alterations and improvements, he is estopped to say that the complainants took no interest under the lease, that their right was repudiated by Marbury, and that he bought not under, but outside of the terms of the lease.
It., is claimed by the defendant, that granting that the complainants were led to believe by him that they were to be jointly interested in the property under the lease in question, the defendant did not assent to the alteration, and the agreement is within the statute of frauds. We find, however, *45 that the defendant did in fact assent to the alteration, and did practically re-execute the lease thereafter, and that if the statute of frauds could be relied upon as applicable to a case of this kind, there is a written instrument conferring a joint right to purchase the land described upon both complainants and defendant, for the consideration of $4,000, signed by the defendant, the party to be charged, as well as by the complainants. It does no violence to the language used, and it is only reasonable to construe this to be an agreement, by the defendant that the complainants shall have and enjoy the right to an equal share and interest in the land if purchased, upon the payment of one-half of the consideration.
The circumstances of this case are such, in our judgment, as to justify the conclusion that it is not within the statute. They require that the defendant shall be held to be a trustee for the benefit of the complainants, to the extent of one-half of the interest of the land purchased. To permit him to retain the exclusive benefit of the purchase would be contrary to equity and good conscience, and enable him to perpetrate a fraud.
“It is (says Chan. Kent in Holridge vs. Gillespie, 2 J. Ch., 30,) a general principle pervading the cases, that if a mortgagee, executor, trustee, tenant for life, etc., who has a limited interest, gets an advantage by being in possession, or ‘ behind the back ’ of the party interested in the subject, or by some contrivance of fraud, he shall not retain the same for his own benefit, but hold it in trust.”

The decree below is affirmed.